Rel: March 20, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2025-0674 and CL-2025-0675

_____

## T.W.

### v.

## Morgan County Department of Human Resources

### Appeals from Morgan Juvenile Court
### (JU-22-1032.02 and JU-22-1034.02)

BOWDEN, Judge.

T.W. ("the mother") appeals from judgments of the Morgan Juvenile Court ("the juvenile court") terminating her parental rights to R.L.W. and L.N.W. ("the children"). The judgments also terminated the parental rights of R.W. ("the father"). The father has not appealed.

The mother argues on appeal that the juvenile court exceeded its discretion by denying her motion to continue the June 25, 2025, termination-of-parental-rights trial and that there was insufficient evidence to support the juvenile court's finding that there are no viable alternatives to the termination of her parental rights. However, we need not reach the merits of the mother's arguments; the record does not contain sufficient evidence from which this court can determine whether the juvenile court acquired subject-matter jurisdiction over the underlying actions under Alabama's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), codified at Ala. Code 1975, § 30-3B-101 et seq. Therefore, we reverse the judgments of the juvenile court and remand the causes for the juvenile court to determine whether it has subject-matter jurisdiction under Alabama's version of the UCCJEA.

<u>Background</u>

The children were born in Indiana.[1] The children lived there with the mother until an Indiana court awarded custody of the children to the father on January 28, 2021. A copy of that judgment is not included in

---

[1]R.L.W. was born on September 1, 2015. L.N.W. was born on August 12, 2016.

the record. The children thereafter moved to Alabama with the father, but the mother continued to live in Indiana.

Testimony indicated that an Indiana court had ordered phone visitation between the mother and the children in March 2021. A copy of that judgment is not included in the record.

The father testified that the mother had not physically been in the children's presence since the Indiana court entered the January 28, 2021, judgment awarding him custody of the children. The father also testified that the mother had not spoken to the children since February 2022. The father testified that he had been unable to facilitate the mother's phone visitation with the children because of his work schedule. The father also testified that the mother did not call him and did not answer when he tried calling her.

In August 2022, the Morgan County Department of Human Resources ("DHR") received a report that the children were living in deplorable conditions. At that time, the father and the children were living in Decatur with K.C. (the father's then-paramour), three other children, K.C.'s stepmother, K.C.'s stepmother's boyfriend, and K.C.'s grandmother. The children remained in the home while DHR provided

in-home services to the father and K.C. The children were placed in the custody and care of DHR on June 9, 2023, following a shelter-care hearing.

DHR filed a petition to terminate the parental rights of the mother and the father on August 12, 2024.[2] DHR alleged in its petition that the mother's current address was unknown and that it had had no contact with the mother since becoming involved with the children in August 2022.

Around September 2024, the father sent the mother a picture of R.L.W. that had been posted on the social-media site Facebook. The picture had the name of the children's foster mother. The mother contacted the foster mother who in turn directed the mother to contact DHR. Up to that point, DHR had been unable to locate the mother based on the records that it had obtained from Indiana, and the father had previously told DHR that he did not know how to find the mother. One of DHR's caseworkers testified that the mother had told her that the mother

---

[2]The record reflects that the same petition and documents filed in the matter regarding R.L.W. were filed in the separate matter regarding L.N.W. For simplicity, we refer to the same documents filed in the respective matters in the singular tense when practicable.

did not know that the children had been removed from the father's custody and wanted to reestablish phone visitation with the children.

On June 18, 2025, the mother filed a motion to continue the termination-of-parental-rights trial that had been reset for June 25, 2025. DHR objected to the mother's motion to continue. The juvenile court entered an order on June 24, 2025, denying the mother's motion.

The next day, June 25, 2025, the juvenile court held the termination-of-parental-rights trial. The mother did not appear but was represented by appointed counsel. The juvenile court noted at the outset of the trial that the trial had been continued on multiple occasions and that "[the mother]'s reasoning in her motion [to continue] was that she didn't have a ride down here [from Indiana], and I just feel like it needs to be more substantial than that." The mother's appointed counsel renewed the motion to continue after DHR rested its case. The juvenile court denied the mother's renewed motion to continue and allowed the trial to proceed.

On July 31, 2025, the juvenile court entered judgments terminating the parental rights of the mother and the father. The mother filed a timely postjudgment "motion for new trial" on August 12, 2025. The

5

juvenile court entered an order on August 25, 2025, denying the mother's postjudgment motion. The mother timely filed a notice of appeal from the judgments to this court.[3]

Analysis

Although neither the mother nor DHR have addressed whether the juvenile court had subject-matter jurisdiction to terminate the mother's parental rights, "'"[defects in] subject-matter jurisdiction may not be waived; a court's lack of subject-matter jurisdiction … may even be raised by a court ex mero motu.'"'" M.A.B. v. D.S., 364 So. 3d 994, 996 (Ala. Civ. App. 2022) (quoting C.H. v. Lamar Cnty. Dep't of Hum. Res., 324 So. 3d 391, 394 (Ala. Civ. App. 2020), quoting in turn J.T. v. A.C., 892 So. 2d 928, 931 (Ala. Civ. App. 2004), quoting in turn C.J.L. v. M.W.B., 868 So. 2d 451, 453 (Ala. Civ. App. 2003)). Furthermore, this court may not

---

[3]The mother filed a notice of appeal to this court on August 21, 2025, or 21 days after the juvenile court entered the judgments. However, under Rule 4(a), Ala. R. App. P., the mother's postjudgment motion, which had been timely filed on August 12, 2025, suspended the 14-day period within which she was required to file a notice of appeal of the judgments.

The mother's notice of appeal was held in abeyance while her postjudgment motion was pending and became effective on August 25, 2025, when the juvenile court entered an order denying her postjudgment motion. Rule 4(a)(5).

presume that a statutorily created court of limited jurisdiction, such as the juvenile court, has subject-matter jurisdiction over a matter. Id.

Our trial courts are required to recognize and enforce an out-of-state court's child-custody determination if that out-of-state court has exercised jurisdiction in substantial conformity with Alabama's version of the UCCJEA. Ala. Code 1975, § 30-3B-303(a); but see M.A.B., 364 So. 3d at 998-99 (recognizing and applying Texas's version of the UCCJEA to determine whether a Texas court had made a child-custody determination and had continuing, exclusive jurisdiction over the determination). Thus, if an Indiana court has made a child-custody determination regarding the children in substantial conformity with Alabama's version of the UCCJEA, the Indiana court has continuing, exclusive jurisdiction over the determination, see Ala. Code 1975, § 30-3B-202, and the juvenile court may terminate the mother's parental rights only if it has subject-matter jurisdiction under Ala. Code 1975, § 30-3B-203, to modify the Indiana court's child-custody determination. M.A.B., 364 So. 3d at 998-99 ("[T]he juvenile court could properly modify the Texas judgment, i.e., rule on the petitioners' petition to terminate

parental rights, only pursuant to the requirements [of] § 30-3B-203[, Ala. Code 1975,] of Alabama's version of the UCCJEA.").

Alabama's version of the UCCJEA defines the term "child custody determination" as "[a] judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." Ala. Code 1975, § 30-3B-102(3). The evidence in the record indicates that an Indiana court entered a judgment on January 28, 2021, awarding custody of the children to the father. The evidence in the record also indicates that an Indiana court entered a judgment in March 2021, awarding phone visitation with the children to the mother.

If the January 28, 2021, and March 2021 judgments of the Indiana court constitute a child-custody determination under Alabama's version of the UCCJEA, the juvenile court could have properly terminated the mother's parental rights only if it had subject-matter jurisdiction to modify the Indiana court's determination under § 30-3B-203.[4] Under §

---

[4]We recognize that the juvenile court may have intended to exercise temporary emergency jurisdiction over the matters pursuant to § 30-3B-204, Ala. Code 1975. Alabama's version of the UCCJEA provides for temporary emergency jurisdiction if a child is present in Alabama and has been abandoned or there is an emergent situation that necessitates protecting the child from mistreatment or abuse. § 30-3B-204(a).

8

30-3B-203, the juvenile court had subject-matter jurisdiction to modify

the Indiana court's determination only if:

    (1) the juvenile court had jurisdiction to make an initial child-

    custody determination under Ala. Code 1975, § 30-3B-201; and

    (2) either:

        (a) the Indiana court has determined that:

---

However, the judgments of the juvenile court were not temporary orders that complied with the requirements of § 30-3B-204. The judgments did not specify an amount of time for DHR to obtain an order regarding the child-custody determination from the Indiana court. § 30-3B-204(c). Nor is there any evidence in the record indicating that the juvenile court "immediately communicate[d]" with the Indiana court upon being informed that the Indiana court had made a child-custody determination regarding the children. § 30-3B-204(d). Moreover, Alabama's version of the UCCJEA does not permit a child-custody determination made under temporary emergency jurisdiction to become final when a determination has been made by another state. § 30-3B-204(b). See M.W. v. Calhoun Cnty. Dep't of Hum. Res., 369 So. 3d 164, 167 (Ala. Civ. App. 2022) ("'Unlike a judgment divesting a parent of custody, a judgment terminating parental rights is immediate, permanent, and irrevocable.'" (citation omitted)). Thus, if the juvenile court intended to exercise temporary emergency jurisdiction over the matters, it lacked jurisdiction under § 30-3B-204 to enter the judgments terminating the mother's parental rights. See T.R. v. Tuscaloosa Cnty. Dep't of Hum. Res., 419 So. 3d 558, 564 (Ala. Civ. App. 2024) (dismissing appeal with instructions for the juvenile court to vacate its judgment awarding permanent custody of a minor child and to revise its earlier orders to a definite and appropriate period for the father to obtain an order from a Florida court that had made a previous child-custody determination because the juvenile court had failed to comply with the procedures set forth in § 30-3B-204 when it entered its judgment).

(i) it no longer has continuing, exclusive jurisdiction under § 30-3B-202, or

(ii) Alabama would be a more convenient forum under Ala. Code 1975, § 30-3B-207; or

(b) the juvenile court or the Indiana court has determined that the children, the father, and the mother do not presently live in Indiana.

See § 30-3B-203.

It appears that the January 28, 2021, and March 2021 orders of the Indiana court constitute a child-custody determination under Alabama's version of the UCCJEA. Accordingly, the juvenile court could have properly terminated the mother's parental rights only if it had subject-matter jurisdiction to modify the Indiana court's child-custody determination pursuant to § 30-3B-203. Under the particular circumstances of these matters, the juvenile court could have acquired subject-matter jurisdiction under § 30-3B-203 only if the Indiana court had determined that it either no longer has continuing, exclusive jurisdiction over the determination or that Alabama would be a more

10

convenient forum for the determination.[5] However, there is no evidence indicating that that the Indiana court has ever made either of those determinations. Therefore, based on the evidence in the record, we cannot ascertain whether the juvenile court properly terminated the mother's parental rights. We conclude that there is insufficient evidence to establish that the juvenile court had subject-matter jurisdiction to modify the Indiana court's child-custody determination regarding the children by terminating the mother's parental rights.

Conclusion

For the foregoing reasons, we reverse the judgments of the juvenile court and remand the causes to the juvenile court to determine, based on the receipt of additional evidence, if necessary, whether it has subject-matter jurisdiction to modify the Indiana court's child-custody determination by terminating the mother's parental rights pursuant to § 30-3B-203. M.A.B., 364 So. 3d at 999. If the juvenile court determines that it does not have jurisdiction to modify the Indiana court's child-

---

[5]The juvenile court could have also acquired subject-matter jurisdiction under Ala. Code 1975, § 30-3B-203, if it had determined that the children, the father, and the mother do not presently live in Indiana. However, we note that there is significant, undisputed evidence in the record indicating that the mother presently lives in Indiana.

custody determination pursuant to § 30-3B-203, we direct the juvenile court to dismiss the matters.

CL-2025-0674 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2025-0675 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, and Fridy, JJ., concur.

Moore, P.J., concurs in the result, without opinion.